A. G. GRAHAM ET AL., v. J. G. GRUGAN ET AL.

132   79
140  332

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 10, 1890—Decided February 3, 1890.
[To be reported.]

(*a*) A testator, dying in 1887, was one of six children whose father was living till 1868, but whose mother had died intestate in 1840, owning real estate held by the father during his life as tenant by the curtesy. The testatrix left no real estate other than her interest in that so held.

(*b*) By her will, executed in 1847, she provided: "All my estate, both real and personal, that I shall inherit as my portion after my father's death, I give and bequeath to my beloved cousins . . . . . their heirs and assigns forever." At her death, her one sixth share of the real estate above mentioned had been allotted to her in severalty:

1. In such case, the provision quoted from the will was applicable to the share of the testatrix in the real estate which descended to her from her mother, and which at the time was owned by her, and not to that which she possibly might inherit subsequently from her father.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 280 January Term 1889, Sup. Ct.; court below, No. 113 June Term 1888, C. P. No. 3.

On March 14, 1888, Annie G. Graham, Sarah L. M. Shoemaker, Harriet M. Shoemaker, and Charles L. Patton brought ejectment against John G. Grugan and William Hinkle, to recover certain real estate. Issue.

On December 22, 1888, a case-stated was agreed upon by the parties and filed, setting out the facts following:

Sarah L. M. Clark died about the year 1840, intestate, seised of a tract of land of which the premises in question are a part. She left surviving her, her husband Lewis Clark, and six chil-

dren of whom Rebecca M. Clark was one, whereby one sixth of the said real estate vested in the said Rebecca M. Clark subject to the tenancy by the curtesy of the said Lewis Clark. The said Sarah L. M. Clark left no personal property.

The said Lewis Clark died testate in the year 1868, leaving real and personal property, under which will the said Rebecca M. Clark took nothing, a contest of said will by said Rebecca M. Clark having proved futile.

In 1869 the children of Sarah L. M. Clark by mutual deeds of partition divided a portion of the property which had descended to them from their mother, and the premises in question were, inter alia, allotted as the share and portion of said Rebecca M. Clark.

On February 6, 1887, the said Rebecca M. Clark died, leaving a will dated January 2, 1847, a copy of which is hereto annexed and marked exhibit A, and the said will was duly admitted to probate by the register of wills of Delaware county on February 23, 1887, wherein and whereby she devised and bequeathed, inter alia, as follows:

" All my estate, both real and personal, that I shall inherit as my portion after my father's death, I give and bequeath to my beloved cousins Dr. William Gray Knowles, and his wife Martha A., their heirs George G. Knowles, Mary Warfield, Gustavus Warfield, and Louisa Victoria Knowles, their heirs and assigns forever."

The said William Gray Knowles and his wife Martha A. Knowles and George Gray Knowles, Mary W. Knowles, Gustavus W. Knowles and Louisa Victoria Knowles conveyed the property in question to the defendants subsequent to the probate of the will of the said Rebecca M. Clark. The plaintiffs are the heirs at law of the said Rebecca M. Clark.

If the court should be of the opinion that the premises in question pass under the will of the said Rebecca M. Clark, judgment to be entered for the defendants; and if the court be of the opinion that the said Rebecca M. Clark died intestate as to the premises in question, judgment to be in favor of the plaintiffs. Either party to have the right to a writ of error to the Supreme Court.

On January 14, 1889, after argument, the court entered

Arguments.

judgment for the defendants, without opinion filed, whereupon the plaintiffs took this appeal specifying that the court erred:

1. In entering judgment for the defendants.
2. In not entering judgment for the plaintiffs.

*Mr. J. Campbell Lancaster* and *Mr. A. Sidney Biddle,* for the appellants:

1. The testator's intention must be drawn from the words of the will alone; and there being no context disclosing an apparent use of ordinary words in other than a primary sense, or technical words in other than a technical sense, the court must give these words their primary and technical meanings, respectively, no matter what the result may be. The primary meaning of the word, inherit, is "to receive a right or title on an ancestor's death:" Webster. The expression, shall, imports futurity. Therefore, the property disposed of by the will can be property only to which testatrix acquired title after a certain event, namely, her father's death. Property which she acquired previously cannot pass under those words. Did she, then, inherit this property before or after her father's death? Of this there can be no doubt. On the very instant that her mother died, the inheritance vested in her mother's children. That the testator inherited the property in dispute before her father's death, becomes merely a question of dates, about which there can be no dispute.

2. A glance at a few cases will clearly show the correctness of the position taken, in insisting upon the application of the primary and technical meanings of the words used: Baker's App., 115 Pa. 590; Carroll v. Burns, 108 Pa. 389; Sponsler's App., 107 Pa. 95; Howe's App., 126 Pa. 233; Ryon's App., 124 Pa. 529; Hancock's App., 112 Pa. 532; Ivins's App., 106 Pa. 176; Dodge's App., 106 Pa. 216; Leach v. Gray, L. R. 6 Ch. D. 496; Methune and Blair Contract, L. R. 16 Ch. D. 696; Dalrymple v. Hill, L. R. 16 Ch. D. 715; In re Sergeant, L. R. 26 Ch. D. 575; Kellett v. Kellett, 3 Dow. 248; Jones v. Robinson, L. R. 3 C. P. Div. 344; Cook v. Juggard, L. R. 1 Exch. D. 126; In re Crossland, 54 L. T. 238; Henderson v. Kennicott, 1 Dru. & War. 472; Commissioners v. Cotter, 2 De G. & Sm. 498. For the importance of the stringent application of this principle, not only as it affects the title to this property,

Arguments.

but on account of the paramount importance of adhering to fixed principles of decision in the construction of wills and the consequent determinations of title, attention is called to the language of Lord WENSLEYDALE, in Roddy v. Fitzgerald, 6 H. L. 876.

3. The heir at law can be disinherited only by express devise, or necessary implication; and hence, in the construction of a will of doubtful meaning, every fair intendment must be made in his favor. He is the favorite in law and in equity. In French v. McIlhenny, 2 Binn. 13, it was said that this rule should be observed with more strictness here than in England, because our laws of inheritance are more equal. "By discarding settled rules of construction and adjudged cases on wills, a judicial tyranny will be established, and this branch of the law thrown into confusion and uncertainty. . . . . No counsel can advise his client under a controverted will; no man can purchase with safety:" Clayton v. Clayton, 3 Binn. 498. And see Rupp v. Eberly, 79 Pa. 144. The conflict with the rule relied upon by the defendants, that a testator will not be presumed to intend to die intestate, is apparent only, not real. The cases cited are illustrations; in all of them the rule last referred to has yielded to the more imperative canon that every doubt will be resolved in favor of the heir at law: Doe v. Bell, 8 T. R. 583; Doe v. Rout, 7 Taunt. 79; Doe v. Parkin, 5 Taunt. 321; Barber v. Wood, L. R. 4 Ch. D. 885.

*Mr. Theodore F. Jenkins*, for the appellees:

1. The words, after my father's death, evidently were used to express the time at which the devisees were to take, and the testatrix meant, "after my father's death, I give and bequeath," etc., which is the ordinary and customary expression; as, "after the marriage or decease of my said wife, in trust," etc.; "after every such nomination, the said trust premises shall be conveyed," etc.; "after the decease of such respective daughter, then," etc.; "after the determination of that estate, to the use of," or, "after the decease of my said heirs, I give," etc.: 1 Powell on Devises, 667–686; Hutton v. Simpson, 2 Vern. 722; Ex parte Rogers, 2 Mad. 455; Willis v. Lucas, 1 P. Wms. 472; Dale v. Dale, 13 Pa. 446.

2. In construing a will, words are to be taken according to

their proper meaning: Hunter's Est., 6 Pa. 97; Shirey v. Postlethwaite, 72 Pa. 39; Hawkins on Wills, 1; and, although a will is said to speak from the death of a testator, yet in construing his intention one must necessarily refer to the period of making the will: Abbott v. Middleton, 7 H. L. 67–82; Missions Board v. Society, 9 Phila. 279; Doe v. Langlands, 14 East 370. Moreover, the word, inherit, is not technical. One of its meanings, given by Webster, is " to become possessed of."

OPINION, MR. JUSTICE GREEN:

The simple question in this case is, what was the property which the testatrix intended to dispose of by her will? It was made forty years before her death, and she certainly meant to die testate. She was one of six children whose father was living, but whose mother had died in 1840, seven years before the date of this will. The mother had died intestate, leaving a tract of land of which the father was tenant by the curtesy during the whole of his life, and the premises in question in this action were a part, one sixth, of that tract. Of course it must be presumed that the testatrix knew that during her father's life she could have no possession of any part of the land, and it must also be presumed that she knew that after her father's death she would become entitled to have, as her own absolutely, her portion of the land owned by her mother at the time of her death. This was something which she knew at the time her will was made, and hence, that it was in her power to dispose of her portion by will to such persons as she pleased. These being the facts, she made her will in the year 1847, containing these words: " All my estate, both real and personal, that I shall inherit as my portion after my father's death, I give and bequeath to my beloved cousins Dr. Wm. Gray Knowles and his wife, Martha A., their heirs George G. Knowles, Mary Warfield, Gustavus Warfield, and Louisa Victoria Knowles, their heirs and assigns, forever."

The question for decision is very simple. Did the testatrix intend to give this land to these persons by this will? If she did, and that intention can be fairly deduced from the words of the will, as a matter of course the title passes. Apt words are employed; the objects of the testatrix's bounty are plainly named, and the testatrix did have an interest in the premises

which she had the right to dispose of. The language certainly is broad enough to include the property in question, and the only point of controversy is, what was the land which the testatrix intended to give? It is the identity of the subject matter of the devise, alone, that is called in question. There is no doubt whatever that the will is completely operative if we hold that the land in dispute was intended to be given, and it is equally true that the will is entirely inoperative if we hold that it does not embrace this land. The testatrix had no other estate in land than this at the time the will was written, and she had none other at the time of her death. All the words of the will are suitable to describe this very land, if we can find from the words of the will that such was the intention of the testatrix. It was land which would not become the absolute property of the testatrix until after her father's death, but it would become hers with certainty when that event transpired. It could not be taken from her, and she had the complete disposing power over it.

But it is argued for the plaintiffs that she did not dispose of it, and therefore she died intestate as to it. The whole force of the reasoning, by which this result is worked out, is by attributing a strictly technical meaning to one word contained in the devise, the word "inherit." It is argued that the courts are bound to hold that the testatrix must be presumed to have meant that she gave to her cousin and his family only the share or portion of her father's estate which she might inherit from him. Of course, if such was the plain meaning of the words of the will, we would be bound to so read them. The chief argument in support of this mode of reading the will is founded upon the supposed technical meaning of the word "inherit." It is contended that it could not apply to land which the testatrix had already inherited from her mother, who had died seven years before the will was written, and because the estate disposed of is described as something "that I shall inherit as my portion after my father's death." But it must be considered that she does not devise anything that she is to inherit from her father, but it is "all my estate, both real and personal;" which literally means her own, not her father's, but into which she will come as her own portion after the death of her father. All of these words are satisfied by reading them as referring to the very

estate she did actually have. It was her portion which she would have after her father's death which she wanted to dispose of. It is true she used the word "inherit," but it is literally true that she did actually "inherit" her portion from her mother, so that that word in its most technical sense is not at all inapt to describe the very estate which she derived from her mother. The idea, also, that it was to come after her father's death, was literally true, when it is considered that she could not have it until after her father's death.

There is therefore no inconsistency in reading the words to mean that they referred to land inherited from her mother, but which she could not have herself, and could not dispose of, until after the death of her father. Read in that way, they are perfectly intelligible, sensible, consistent with themselves, and are operative. Read in the way sought by plaintiffs, we must suppose that a young girl was seriously making a will disposing of something which she did not have, which she could not possibly know she ever would have, and without its appearing that her father ever had any real or personal estate at the time this will was written. It is a most extraordinary thing for children during the life of a parent, and many years before his death, to dispose by will of his estate, or such portion of it as they may suppose might at some time come to them by inheritance. I have never read or heard of such a case, and it would be a most strained and unreasonable inference that such was the meaning of this testatrix. We must suppose that she really intended to dispose of an actual interest in property, which she knew would pass to her devisees at some time or other. That intention can be effectuated by applying this testamentary language to this property, and without the slightest violence to the meaning of the words. A contrary reading would require us to attribute a most insensible and irrational purpose to the testatrix; it would defeat entirely her manifest intent to make a gift to her near relatives, and it would result in declaring her intestate by imposing a forced meaning upon words which do not demand it. We decline to take such a step, and are clearly of opinion that the court below was entirely right in entering judgment for the defendants on the case stated.

Judgment affirmed.